# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON HAYNES, | 1:08-CV-01937 OWW SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of guilty on March 4, 1982, to second degree murder in violation of Cal. Penal Code § 187. See Petition at 2. Petitioner was sentenced to serve an indeterminate term of fifteen years to life in state prison with the possibility of parole. Id.

On September 15, 2006, a subsequent parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. See

1

Hearing Transcript attached as Exhibit 1 to Petition (hereinafter "Transcript"). Petitioner attended the hearing and was represented by his attorney. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for one year. Id. at 68.

Petitioner sought relief in the state courts by filing petitions for writ of habeas corpus in the superior court, appellate court, and California Supreme Court. See Exhibits 1, 3 and 5, Answer. The superior court denied the petition in a reasoned opinion. See Exhibit 2, Answer. The appellate court and California Supreme Court summarily denied the subsequent petitions. See Exhibits 4 and 6, Answer.

On December 18, 2008, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition for writ of habeas corpus challenges the 2006 decision of the Board denying parole. On July 8, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on September 9, 2009.

## FACTUAL BACKGROUND[1]

On February 13, 1981 at approximately 10:00 p.m., the victim, David Lee Nixon, was riding his bicycle on 84th Place approaching Avalon Boulevard in central Los Angeles when Petitioner, who was with three people at the time, called him over to the curb. During the conversation, Petitioner asked Nixon if he was a Crip, to which Nixon responded in the negative. According to witnesses, Petitioner told the victim that he had seen him gang banging since he left Fremont High, which the victim denied. Petitioner then told Nixon that he could "Get on," and as Nixon was riding away on his bicycle, Petitioner pulled out a .22-caliber handgun from his waistband and fired five times, striking Nixon once in the back of the head. Petitioner fled after the shooting.

Nixon was transported to Martin Luther King Hospital. He was not identified, he was unconscious, and he could make no statement. He sustained a gunshot wound to the back of the head and was placed on life support systems. He died four days later.

Subsequent to the shooting, officers received an anonymous phone call that members of

---

[1]The information is derived from the factual summary as set forth in the parole hearing proceedings. See Transcript at 6-8.

the Swans were responsible for the killing. Petitioner, whose street name is Puppet, was identified as the shooter and reportedly bragged about the killing, alleging, "I shot me a nigger, I shot me a Crip." Petitioner was subsequently booked on a murder warrant in county jail.

**DISCUSSION**

I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

1  § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

2  As a threshold matter, this Court must "first decide what constitutes 'clearly established
3  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
4  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
5  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
6  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
7  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
8  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

9  Finally, this Court must consider whether the state court's decision was "contrary to, or
10 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
11 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
12 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
13 Court on a question of law or if the state court decides a case differently than [the] Court has on a
14 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
15 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
16 state court identifies the correct governing legal principle from [the] Court's decisions but
17 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
18 413.

19 "[A] federal court may not issue the writ simply because the court concludes in its
20 independent judgment that the relevant state court decision applied clearly established federal
21 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
22 A federal habeas court making the "unreasonable application" inquiry should ask whether the
23 state court's application of clearly established federal law was "objectively unreasonable." Id. at
24 409.

25 Petitioner has the burden of establishing that the decision of the state court is contrary to
26 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
27 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
28 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

1   state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
2   Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

3       AEDPA requires that we give considerable deference to state court decisions. The state
4   court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
5   interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
6   537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

7       In this case, because the California Supreme Court summarily denied the habeas petition,
8   this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501
9   U.S. 797, 804-05 & n.3 (1991).

10  II.   Review of Petition

11      A parole release determination is not subject to all the due process protections of an
12  adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
13  also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
14  protections that particular situations demand). "[S]ince the setting of a minimum term is not part
15  of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
16  constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at
17  1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole
18  board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate
19  must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be
20  afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied
21  parole, the inmate must be told why "he falls short of qualifying for parole." Id.

22      As to these procedural protections, Petitioner was provided with all that is required. He
23  was given advanced written notice of the hearing, an opportunity to submit materials for the
24  Board's consideration, an opportunity to be heard, representation by an attorney, and a written
25  decision explaining the reasons parole was denied.

26      "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not
27  comport with 'the minimum requirements of procedural due process,' unless the findings of the
28  prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454

(1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) Previous criminal history; 3) Unstable social history; and 4) Institutional behavior. See Transcript at 49-57.

First, the Board determined that the commitment offense was especially heinous,

atrocious or cruel.[2] Specifically, the Board found that Petitioner carried out the offense in a dispassionate and calculated manner. 15 Cal. Code Regs. § 2402(c)(1)(B). The Board noted that Petitioner was armed with a loaded firearm when he called the victim over to him. The victim, who was unarmed, complied. After Petitioner told the victim he could leave, the victim began to ride away on his bicycle. At this point, Petitioner opened fire striking the victim in the back of the head. Given these facts, the superior court found there was some evidence supporting the Board's finding. See Exhibit 2, Answer. The superior court determined that some evidence also supported the finding that the motive was very trivial. 15 Cal. Code Regs. § 2402(c)(1)(E). The court noted that Petitioner killed the victim as he was riding away for no apparent reason other than he believed the victim was in a rival gang. See Exhibit 2, Answer. In light of the facts of the case, the state court's determination was not unreasonable.

The Board also found that Petitioner's previous record of criminal violence weighed against suitability. 15 Cal. Code Regs. § 2402(c)(2). The Board stated that Petitioner had an escalating pattern of criminal conduct which included violent and assaultive behavior. See Transcript at 51. In particular, prior to the instant offense Petitioner had committed battery, three burglaries, and possession of narcotics. Id. at 17-19. The superior court determined that Petitioner's prior convictions were some evidence that Petitioner had a previous record of violence demonstrating unsuitability; the court's determination was not unreasonable.

Next, the Board determined that Petitioner's unstable social history prior to the offense also presented a factor indicating unsuitability. 15 Cal. Code Regs. § 2402(c)(3). The Board noted that Petitioner did not have a family support system but instead relied on gangs as his

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

1 support. See Transcript at 51. This factor was also supported by some evidence.

2 Finally, the Board found that Petitioner had engaged in serious misconduct while in
3 prison, and this factor also weighed against parole release. 15 Cal. Code Regs. § 2402(c)(6).
4 During his incarceration, Petitioner had sustained twenty-three "CDC 128" counseling chronos
5 for misbehavior such as failing to report to work assignments, delaying count, behavioral
6 deviations, loitering, unauthorized cell window coverings, absence from work assignments,
7 failure to lock up, horse play, and others. See Transcript at 34-35. Petitioner had sustained
8 thirteen "CDC 115" serious rules violations for refusing direct orders, disobeying direct orders,
9 flooding of cell, venturing out of bounds, throwing a food tray, multiple incidents of fighting,
10 and possession of razor blades. Id. at 35-37. The most recent incident was the possession of
11 razor blades which occurred on January 30, 2001. Id. at 37. In light of this misconduct, the state
12 court determination that some evidence supported the Board's conclusion that Petitioner
13 remained a danger to the public was not unreasonable.

14 The Board also considered the positive factors favoring parole release. Id. at 54. The
15 psychological report was favorable and Petitioner had viable parole plans for housing and
16 employment. Id. Nevertheless, the Board concluded that Petitioner remained an unreasonable risk
17 of danger to the public, because his commitment offense, when viewed along with his previous
18 record of violence, his unstable social history involving gangs, and his continuing misbehavior in
19 prison, were indicative of a present danger to the public should he be released.

20 In light of the record, it cannot be said that the state court determination that there was
21 some evidence supporting the Board's finding that Petitioner posed a risk of danger to the public
22 "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly
23 established Federal law, as determined by the Supreme Court of the United States" or "resulted
24 in a decision that was based on an unreasonable determination of the facts in light of the evidence
25 presented in the State Court proceeding." 28 U.S.C. § 2254(d). Therefore, Petitioner's claim that
26 the Board's decision violated his constitutional rights must be denied.

27 Petitioner also claims that the Board's perpetual reliance on the commitment offense
28 violates his due process rights. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the

8

Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." This is simply not the case here. The Board did not rely solely on the commitment offense or Petitioner's previous record of violence. The Board also found Petitioner's extensive, serious, and continuing misbehavior during incarceration to be a significant factor indicating unsuitability.

Petitioner also contends that the Board failed to provide him with individualized consideration of specified criteria in determining his eligibility for parole. The record of the parole hearing, as discussed above, demonstrates Petitioner was given a fair hearing at which the Board thoroughly reviewed Petitioner's pre- and post-conviction history and assessed every relevant factor in determining his parole suitability.

In addition, Petitioner argues that the Board has recharacterized his commitment offense to a crime that carries a more severe penalty in violation of his due process rights. This is also not the case. The Board reviewed the underlying offense and noted circumstances of that crime which tended to indicate unsuitability, pursuant to 15 Cal. Code Regs. § 2402(c)(1). As previously stated, this Court's analysis in determining "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case" and is therefore constitutional "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. By complying with California regulations for determining Petitioner's parole suitability, the Board did not violate his constitutional rights.

Petitioner also complains that the Board's denial violates the plea bargain he entered in the underlying conviction; however, this claim was dismissed by the District Court on February 19, 2009.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District

Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 21, 2009**                              /s/ Sandra M. Snyder
                                                     UNITED STATES MAGISTRATE JUDGE